IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LLOYD A. HALSELL, )
)
    Plaintiff, )
)
v. ) Case No. CIV-10-839-L
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
    Defendant. )

**REPORT AND RECOMMENDATION**

Mr. Lloyd Halsell applied for supplemental security income and insurance benefits based on an alleged disability. *See* Administrative Record at pp. 125-27, 131-36 (certified December 23, 2010) ("Record"). The Social Security Administration rejected the claim,[1] and Mr. Halsell initiated the present action based on error in the consideration of a reading disorder and a subsequent lack of substantial evidence at step five. The Court should affirm the findings of the Social Security Administration.

I.    STANDARD OF REVIEW

The Court's review entails only a determination of whether the administrative decision is based on substantial evidence and the correct legal standard. *See Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991). If the agency's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d

---

[1]     Record at pp. 1-3, 11-24, 71, 73.

1232, 1235 (10th Cir. 1984). However, a court may not reweigh the evidence or substitute its judgment for that of the Social Security Administration. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

II.     RELEVANT EVIDENCE AND ADMINISTRATIVE FINDINGS

As part of a consultative examination, Dr. M. Gerald Ball administered the Wide Range Achievement Test-III to Mr. Halsell. Record at pp. 302-305. On the reading portion of the test, Mr. Halsell could read fourteen stimulus words, which reflected a third grade reading level. *Id.* at pp. 303, 305. Based on this performance, Dr. Ball diagnosed the Plaintiff with a reading disorder. *Id.* And, in light of a separate intelligence test, Dr. Ball concluded that Mr. Halsell's intellectual functioning was "borderline." *Id.*

At the administrative hearing, the Plaintiff stated he could read a simple grocery list, but had difficulty with comprehension. *Id.* at pp. 31-33. In assessing the Plaintiff's ability to perform other work in the national economy, the administrative law judge utilized the assistance of a vocational expert ("VE"). The judge asked the VE to identify available jobs for an individual with certain restrictions and the same education as the Plaintiff. *Id.* at pp. 64-67. The VE testified that such an individual could work as an addresser, a touch-up screener, or an order clerk. *Id.* at p. 67.

At step two of the administrative decision, the judge concluded that the Plaintiff suffered from severe borderline intellectual functioning. *Id.* at p. 13. However, the step two finding did not mention a reading disorder. *See id.*

2

The reading disorder was also omitted in the judge's assessment of the residual functional capacity ("RFC"). *See id.* at p. 15.

At step five, the administrative law judge concluded that the Plaintiff was not disabled, finding that he could perform the three jobs identified by the VE. *Id.* at p. 23.

### III. THE PLAINTIFF'S ARGUMENTS

Mr. Halsell alleges:

- error at step two for failure to include the reading disorder as a severe impairment,

- error at step four for failure to include the reading disorder in the RFC assessment, and

- absence of substantial evidence for the step five finding.

The Plaintiff's contentions are not persuasive.

### IV. NO ERROR AT STEPS TWO AND FOUR

Under the social security regulations, "literacy" encompasses an individual's reading ability and is included in the broader category of "education," one of several vocational factors. *See* 20 C.F.R. §§ 404.1564, 416.964. The Plaintiff asserts that the administrative law judge should have considered the reading limitation at steps two and four, when she addressed the existence of a severe impairment and the RFC. This assertion reflects an erroneous view about the required analysis at these steps.

3

"The step two severity determination is based on medical factors alone, and 'does not include consideration of such vocational factors as . . . education.'" *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (citation omitted). Thus, the administrative law judge correctly declined to consider the reading limitation when she identified the severe impairments at step two. *See* Record at p. 13.

The same is true at step four, when the administrative law judge addressed the RFC. The agency addresses the RFC based on the claimant's medically determinable impairments. *See* 20 C.F.R. §§ 404.1545(a)(4), (b)-(d), 416.945(a)(4), (b)-(d). Vocational factors, such as education, are distinct from the RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1142 (8th Cir. 1982) (*en banc*) (distinguishing between vocational factors, such as education, from the RFC "which is a medical factor"). Thus, the administrative law judge correctly declined to include the reading limitations in her RFC findings. *See* Record at pp. 15-22.

Vocational factors, including education, are considered at step five of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1560, 404.1564, 416.960, 416.964. However, the administrative law judge had no duty to consider the reading disorder until she had reached this step.

Accordingly, the Court should reject the Plaintiff's claim that the administrative law judge had failed to consider the reading disorder at steps two and four.

V.   NO ERROR AT STEP FIVE

The step five finding was supported by substantial evidence.

At step five, the judge concluded that the Plaintiff was not disabled based on the VE's testimony. Record at p. 23; *see id.* at pp. 66-67.

According to the Plaintiff, the administrative law judge should not have relied on the VE's testimony because the hypothetical questioning had not adequately accounted for the reading disorder. Mr. Halsell is mistaken.

At the hearing, the following exchange occurred between the judge and Mr. Halsell in the presence of the VE:[2]

| | |
|---|---|
| ADMINISTRATIVE LAW JUDGE: | Okay. Can you read? |
| MR. HALSELL: | To some point, yes. I don't understand what I'm reading. It don't - - it seems like it goes in and then it don't translate to what I'm reading. |
| ADMINISTRATIVE LAW JUDGE: | Okay. |
| MR. HALSELL: | And I don't understand it. |
| ADMINISTRATIVE LAW JUDGE: | But you can read? |
| MR. HALSELL: | Some, yes. |
| ADMINISTRATIVE LAW JUDGE: | How about a grocery list that said butter, eggs, bread, Coke? |
| MR. HALSELL: | I could read that, yes. |
| ADMINISTRATIVE LAW JUDGE: | Ham, could you read that? |
| MR. HALSELL: | Yes. |

---

[2] *See* Record at p. 27 (noting the VE's presence when the hearing began).

*Id.* at pp. 32-33.

The administrative law judge then asked the VE to consider an individual with the same "education" as that of the Plaintiff. *See supra* p. 2. The term "education" encompassed Mr. Halsell's reading disorder. *See supra* p. 3. Thus, the VE answered the hypothetical question based on the Plaintiff's description of his reading difficulties.

The issue is whether the Plaintiff's testimony adequately reflects his reading disorder. The Court should conclude that it does, as the Plaintiff explained the limits on his ability to read. The VE heard the testimony and presumably considered it when she was asked to identify jobs that could be performed by an individual with the Plaintiff's education. The VE obviously knew from the testimony that the Plaintiff could read only simple words and had difficulty with comprehension. In these circumstances, the Court should conclude that the VE was aware of the reading disorder even though Dr. Ball's assessment had not been mentioned. The VE's awareness of the reading disorder is fatal to the Plaintiff's claim.[3]

## VI. RECOMMENDED RULING

The Court should affirm the decision of the Social Security Administration.

---

[3] *See Welch v. Chater*, 98 F.3d 1350, 1996 WL 563856, Westlaw op. at 3 (10th Cir. Sept. 27, 1996) (unpublished op.) ("[G]iven the expert's presence at the hearing, it was permissible to presume that his responses accounted for such background information already testified to by plaintiff." (citations omitted)).

VII. NOTICE OF THE RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1) (2006). The deadline for objections is August 8, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(d), 72(b)(2). The failure to file timely objections would result in waiver of the right to appeal the suggested ruling.[4]

VIII. STATUS OF THE REFERRAL

The referral is discharged.

Entered this 20th day of July, 2011.

*/s/ Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge

---

[4] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").